**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| MARK THOMAS, individually ) <br> and on behalf of all others similarly situated ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> ) <br> RITZ CAMERA CENTERS, INC., ) <br> ) <br> Defendant. ) | No.  08 CV 453 <br><br> Judge Guzman <br><br> Magistrate Judge Cole <br><br> JURY DEMANDED |

**MEMORANDUM IN SUPPORT OF
PLAINTIFF'S REVISED MOTION FOR CLASS CERTIFICATION**

Plaintiff has requested that this Court enter an order determining that this action may proceed as a class action against defendant. This memorandum is submitted in support of that motion.

**I.     NATURE OF THE CASE**

The Fair and Accurate Credit Transactions Act ("FACTA") amendment to the Fair Credit Reporting Act ("FCRA"), prohibits merchants from printing more than 5 digits of cardholders' credit or debit card numbers on receipts. 15 U.S.C. 1681c(g). It also prohibits printing the expiration date on receipts. *Id.*

On December 20, 2006, defendant provided plaintiff with an electronically printed receipt with his expiration date listed on it.

The Seventh Circuit has held that liability in FCRA cases similar to this one should be resolved on a class-wide basis. *Murray v. GMAC Mortgage Corp.*, 434 F.3d 948, 956 (7th Cir. 2006). Judge Bucklo certified a FACTA receipt truncation class of 990,000 persons in *Halperin v. Interpark Inc.*, case no. 1:07-cv-2162, 2007 U.S. Dist. LEXIS 87851 (N.D.Ill. Nov. 28, 2007). Judge

Aspen similarly certified a class in a FACTA receipt truncation case in *Troy v. Balducci*, case no. 1:07-cv- 2418, 2007 U.S. Dist. LEXIS 89004 (N.D.Ill. Dec. 4, 2007).  Magistrate Judge Schenkier recommended certification of an internet receipt FACTA truncation case in *Harris v. Circuit City*, case no. 07 C 2512 (N.D.Ill Feb. 7, 2008).  Exhibit 4.

Because the requirements of Rule 23 are met here, this Court should grant plaintiff's class certification motion.

*A.     Plaintiff's Claims*

Since December 4, 2006, the FCRA has required all merchants that electronically print credit card receipts to truncate all but the last five numbers in the account number and the expiration date.  15 U.S.C. § 1681c(g).  The law was passed on December 4, 2003 in order to curb identity theft; businesses had three years to come into compliance.  Immediate compliance was required for credit card processing set up after January 1, 2005.  15 U.S.C. § 1681c(g)(3)(B).

On December 20, 2006, plaintiff made a purchase from Ritz Camera at its 2255 W. 95th Street store.  As part of that transaction defendant provided plaintiff with an electronically printed receipt with his expiration date on it in violation of FACTA.

Statutory damages are available for "willful" and negligent violations of the FCRA. 15 U.S.C. §§ 1681n, 1681o.  The question of "willfulness" is well-suited for class treatment in this case because defendant acted identically willfully with respect to all class members, including plaintiff. 15 U.S.C. § 1681n; *Safeco Ins. Co. of Am. v. Burr*, 127 S. Ct. 2201, 2206 (2007); *Murray v. GMAC Mortgage Corp.*, 434 F.3d 948, 956 (7th Cir. 2006).

*B.     Murray v. GMAC Mortgage supports certification*

*GMAC Mortgage* support's plaintiff's arguments that a class should be certified in this case.  *GMAC Mortgage* held, in pertinent part, that:

1.  the class action procedure "was designed for situations such as this, in which the potential recovery is too slight to support individual suits, but injury is substantial in the aggregate" [*GMAC Mortgage*, 434 F. 3d at 953];

2.  statutory damages provide relief for actual losses that are small and hard to quantify, without proof of injury [*Id.*]; and

3.  an award to the class "that would be unconstitutionally excessive may be reduced.... but constitutional limits are best applied after a class has been certified [when] a judge may evaluate the defendant's overall conduct and control its total exposure" [*Id.* at 954 (citing *State Farm Mutual Automobile Insurance Co. v. Campbell*, 538 U.S. 408 (2003))].

These factors clearly indicate that the matter before this Court is suitable for class certification. Proof in this case is standardized—from the receipts that were given to plaintiffs and other customers, to the hardware and software that produced them.

## II.    STANDARD FOR CLASS CERTIFICATION

Class actions are essential to enforce laws protecting consumers. As the Court stated in *Eshaghi v. Hanley Dawson Cadillac Co.,* 214 Ill.App.3d 995, 574 N.E.2d 760 (1st Dist. 1991):

> In a large and impersonal society, class actions are often the last barricade of consumer protection.... To consumerists, the consumer class action is an inviting procedural device to cope with frauds causing small damages to large groups. The slight loss to the individual, when aggregated in the coffers of the wrongdoer, results in gains which are both handsome and tempting. The alternatives to the class action—private suits or governmental actions—have been so often found wanting in controlling consumer frauds that not even the ardent critics of class actions seriously contend that they are truly effective. The consumer class action, when brought by those who have no other avenue of legal redress, provides restitution to the injured, and deterrence of the wrongdoer. [*Id.*, 574 N.E.2d at 764, 766.]

Classes have been certified in a number of other FCRA cases as well. *E.g. Wood v. Capital One Auto Finance*, 2006 U.S. Dist. LEXIS 67513 (E.D.Wis. Sept. 19, 2006). See also *In re Farmers Insurance Co., Inc., FCRA Litigation,* 2006 U.S. Dist. LEXIS 27290 (W.D.Okla. Apr. 13, 2006); *In re Trans Union Corp. Privacy Litigation*, 2005 U.S. Dist. LEXIS 17548 (N.D.Ill. August 17, 2005); *Thomas v. NCO Financial Systems, Inc.*, 2004 U.S. Dist. LEXIS 5405 (E.D.Pa., March

31, 2004) (settlement; illegal "reaging" of old debts on credit reports); *Perry v. FleetBoston Financial Corp.*, 229 F.R.D. 105 (E.D.Pa. 2005) (settlement; illegal accessing of credit reports); *Clark v. Experian Information Solutions, Inc.*, 2004 U.S. Dist. LEXIS 28324 (D.S.C. Jan. 14, 2004) (settlement, improper reporting of debts); *Ciccarone v. B. J. Marchese, Inc.*, 2004 U.S. Dist. LEXIS 26489 (E.D.Pa. Dec. 14, 2004), later opinion, 2004 U.S. Dist. LEXIS 25747 (E.D.Pa., Dec. 22, 2004) (settlement; alleged unauthorized accessing of consumer reports); *Stoner v. CBA Information Services,* 352 F.Supp.2d 549 (E.D.Pa. 2005) (settlement; alleged policy of refusing to investigate consumer disputes regarding items on their credit reports); *Ashby v. Farmers Ins. Co.*,, 2004 U.S. Dist. LEXIS 21053 (D.Ore. Oct. 18, 2004) (class certified in action alleging failure to give notice of adverse action); *Braxton v. Farmer's Ins. Group,* 209 F.R.D. 654 (N.D.Ala. 2002) (similar); *White v. Imperial Adjustment Corp.*, 2002 U.S. Dist. LEXIS 26610 (E.D.La. Aug. 6, 2002), affirmed by unpublished opinion, 2003 U.S.App. LEXIS 20162 (5th Cir. Oct. 2, 2003), later opinion, 2005 U.S.Dist. LEXIS 13382 (E.D.La. June 28, 2005) (impermissible accessing of consumer reports); and *Mathews v. Government Employees Ins. Co.,* 23 F.Supp.2d 1160 (S.D.Cal. 1998) (same).

In the present case, the critical issues are (a) whether Defendant had a practice of providing customers with a sales or transaction receipt on which Defendant printed more than the last five digits of the credit card or debit card and/or the expiration date of the credit card or debit card; and (b) whether Defendant thereby willfully violated FACTA. Such claims can be resolved, in part or in whole, at summary judgment, as has been the case in actions involving the pre-screening of credit information. *Murray v. IndyMac Bank, FSB*, 461 F. Supp. 2d 645 (N.D.Ill. 2006); *Murray v. Sunrise Chevrolet, Inc.*, 441 F.Supp.2d 940 (N.D.Ill. 2006). Both of these inquiries are uniform with respect to the entire class, and will be decided on facts that apply equally to all class members.

The Court has the discretion to adjust statutory damages, if appropriate. *GMAC*

*Mortgage* held that a limitation on supposedly excessive damages on due process grounds would best applied after a class certification. Then a judge may evaluate the defendant's overall conduct and control its total exposure. "Reducing recoveries by forcing everyone to litigate independently—so that constitutional bounds are not tested, because the statute cannot be enforced by more than a handful of victims—has little to recommend it." *GMAC Mortgage*, 434 F.3d at 954.

Furthermore, possibility of excessive damages "might be invoked, not to prevent certification, but to nullify that effect and reduce the aggregate damage award." *Parker v. Time Warner Entertainment Co.,* 331 F.3d 13, 22, 27-28 (2d Cir. 2003); *State of Texas v. American Blast Fax, Inc.*, 164 F.Supp.2d 892 (W.D.Tex. 2001) (same).

### III. THE PROPOSED CLASS MEETS THE CERTIFICATION REQUIREMENTS

   *A.   Numerosity*

Fed.R.Civ.P. 23(a)(1) requires that the class be "so numerous that joinder of all members is impracticable." "When the class is large, numbers alone are dispositive...." *Riordan v. Smith Barney*, 113 F.R.D. 60, 62 (N.D.Ill.1986). Where the class numbers at least 40, joinder is generally considered impracticable. *Cypress v. Newport News General & Nonsectarian Hosp. Ass'n*, 375 F.2d 648, 653 (4th Cir. 1967) (18 sufficient); *Swanson v. American Consumer Industries,* 415 F.2d 1326, 1333 (7th Cir. 1969) (40 sufficient); *Riordan, supra*, 113 F.R.D. 60 (10-29 sufficient); *Philadelphia Electric Co. v. Anaconda American Brass Co.*, 43 F.R.D. 452, 463 (E.D.Pa. 1968) (25 sufficient); *Sala v. National R. Pass. Corp.*, 120 F.R.D. 494, 497 (E.D.Pa. 1988) (40-50 sufficient); *Scholes v. Stone, McGuire & Benjamin*, 143 F.R.D. 181, 184 (N.D. Ill. 1992) (about 70).

It is not necessary that the precise number of class members be known. "A class action may proceed upon estimates as to the size of the proposed class." *In re Alcoholic Beverages Litigation*, 95 F.R.D. 321 (E.D.N.Y. 1982); *Lewis v. Gross*, 663 F. Supp. 1164, 1169 (E.D.N.Y.

1986). Plaintiff will propound discovery as to the number of class members, but it is reasonable to infer that from the number of stores defendant has in Cook County that they issued more then forty receipts.

*B. Predominance of common questions of law or fact*

Fed.R.Civ.P. 23(a)(2) requires that there be a common question of law *or* fact. Rule 23(b)(3) requires that the questions of law or fact common to all members of the class predominate over questions pertaining to individual members.

These requirements are normally satisfied when there is an essential common factual link between all class members and the defendant for which the law provides a remedy. *Halverson v. Convenient Food Mart, Inc.*, 69 F.R.D. 331 (N.D. Ill. 1974). Where a question of law involves "standardized conduct of the defendant toward members of the proposed class, a common nucleus of operative facts is typically presented, and the commonality requirement... is usually met." *Franklin v. City of Chicago*, 102 F.R.D. 944, 949 (N.D.Ill. 1984); *Patrykus v. Gomilla*, 121 F.R.D. 357, 361 (N.D.Ill. 1988). The authorities hold that cases dealing with the legality of standardized documents or conduct are generally appropriate for resolution by means of a class action because the document or conduct is the focal point of the analysis. *Halverson*, 69 F.R.D. 331; *Haroco v. American Nat'l Bank*, 121 F.R.D. 664, 669 (N.D. Ill. 1988) (improper computation of interest); *Kleiner v. First Nat'l Bank*, 97 F.R.D. 683 (N.D.Ga. 1983) (same); *Heastie v. Community Bank*, 125 F.R.D. 669 (N.D.Ill. 1989) (execution of home improvement financing documents in sequence that evaded consumers' rescission rights). This is true even though the nature and amount of damages may differ among the members of the class. *Id.*

In this case, the "common nucleus of operative fact," *Halverson*, 69 F.R.D. at 335, is that defendant provided to plaintiff and the class members noncompliant receipts. The dispositive

issues— indeed, the *only* issues—are (1) whether the material provided to plaintiff complies with 15 U.S.C. §1681c(g), and (2) whether defendant violated the FCRA willfully.

The alleged failure to comply with FACTA is the same for each person who received a noncompliant receipt; thus, each class member has the same claim. *GMAC Mortgage* held that this sort question does not call for any sort of individualized inquiry. Accordingly, the questions of whether noncompliant receipts were provided and whether the FACTA violation was willful depends on facts involving defendant's activities, and not the activities of plaintiffs or class members.

The only individual issue is the identification of the consumers who were provided with a noncompliant receipt.

At any rate, identification of class members is not an obstacle to class certification. *Heastie v. Community Bank, supra*, 125 F.R.D. 669 (N.D.Ill. 1989) (court found that common issues predominated where individual questions of injury and damages could be determined by "merely comparing the contract between the consumer and the contractor with the contract between the consumer and Community Bank").

 C. *Typicality*

Rule 23 requires that the claims of the named plaintiff be typical of the claims of the class:

> A plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members and his or her claims are based on the same legal theory. The typicality requirement may be satisfied even if there are factual distinctions between the claims of the named plaintiffs and those of other class members. Thus, similarity of legal theory may control even in the face of differences of fact. [*De La Fuente v. Stokely-Van Camp, Inc.,* 713 F.2d 225, 232 (7th Cir. 1983) (citation omitted).]

In the instant case, typicality is inherent in the class definition. Each of the class members has been

subjected to the same practice as the named plaintiff. Typicality is met.

  *D.*  *Adequacy*

  The rule also requires that the named plaintiffs provide fair and adequate protection for the interests of the class. That protection involves two factors: (a) the plaintiff's attorney must be qualified, experienced, and generally able to conduct the proposed litigation; and (b) the plaintiff must not have interests antagonistic to those of the class. *Rosario v. Livaditis,* 963 F.2d 1013, 1018 (7th Cir. 1992); *accord, Wetzel v. Liberty Mutual Ins. Co.,* 508 F.2d 239, 247 (3d Cir. 1975); *In re Alcoholic Beverages Litigation,* 95 F.R.D. 321.

  Plaintiff understands the obligations of a class representative, and has retained experienced counsel. See <u>Exhibit 3</u>.

  Another relevant consideration under Rule 23(a)(4) is whether the interests of the named plaintiff are coincident with the general interests of the class. Here, both plaintiff and the class members seek money damages as the result of defendant's violation of the FCRA. Given the identity of claims between plaintiff and the class members, there is no potential for conflicting interests in this action. There is no antagonism between the interests of the named plaintiff and those of the class.

  *E.*  *Superiority*

  In *GMAC Mortgage*, the Seventh Circuit held that cases such as this one, where scores of people have exactly the same claim, are well-suited for class resolution:

> [Fed.R.Civ.P] 23(b)(3) was designed for situations such as this, in which the potential recovery is too slight to support individual suits, but injury is substantial in the aggregate. See, *e.g.*, *Mace v. Van Ru Credit Corp.*, 109 F.3d 338, 344-345 (7th Cir. 1997). Reliance on federal law avoids the complications that can plague multi-state classes under state law, see *In re Bridgestone/Firestone, Inc., Tires Products Liability Litigation*, 288 F.3d 1012 (7th Cir. 2002), and society may gain from the deterrent effect of financial awards. The practical alternative to class

>litigation is punitive damages, not a fusillade of small-stakes claims. See *Mathias v. Accor Economy Lodging, Inc.*, 347 F.3d 672 (7th Cir. 2003). [*GMAC Mortgage*, 434 F.3d at 953.]

Generally speaking, efficiency is the primary focus in determining whether the class action is the superior method for resolving the controversy presented. *Eovaldi v. First Nat'l Bank,* 57 F.R.D. 545 (N.D. Ill. 1972). The Court is required to determine the best available method for resolving the controversy in keeping with judicial integrity, convenience, and economy. *Scholes*, 143 F.R.D. at 189; *Hurwitz v. R.B. Jones Corp.,* 76 F.R.D. 149 (W.D.Mo. 1977). It is proper for a court, in deciding the "best" available method, to consider the "inability of the poor or uninformed to enforce their rights, and the improbability that large numbers of class members would possess the initiative to litigate individually." *Haynes v. Logan Furniture Mart, Inc., supra,* 503 F.2d 1161, 1165 (7th Cir. 1974).

In this case there is no better method available for the adjudication of the claims which might be brought by each individual consumer. The vast majority of consumers are undoubtedly unaware that their rights have been violated. Furthermore, the filing of hundreds of FCRA suits against Defendant would be unduly burdensome to the Courts; judicial efficiency would be greatly promoted through the adjudication of identical claims through a single proceeding.

Even if the class was very large, large numbers of class members "is no argument at all" against certification. *Carnegie v. Household Int'l, Inc.*, 376 F.3d 656, 660-61 (7th Cir. 2004). "The more claimants there are, the more likely a class action is to yield substantial economies in litigation. It would hardly be an improvement to have in lieu of this single class action 17 million suits each seeking damages of $15 to $30.... The realistic alternative to a class action is not 17 million individual suits, but zero individual suits, as only a lunatic or a fanatic sues for $30. But a class action has to be unwieldy indeed before it can be pronounced an inferior alternative—no matter

how massive the fraud or other wrongdoing that will go unpunished if class treatment is denied—to no litigation at all." *Id.* *GMAC Mortgage* concurred with this view, holding that:

> reducing recoveries by forcing everyone to litigate independently—so that constitutional bounds are not tested, because the statute cannot be enforced by more than a handful of victims—has little to recommend it. [*GMAC Mortgage*, 434 F.3d at 954.]

The special efficacy of the consumer class action has been noted by the courts and is applicable to this case. *In re Folding Carton Antitrust Litigation,* 75 F.R.D. 727, 732 (N.D. Ill. 1977), noted that:

> a class action permits a large group of claimants to have their claims adjudicated in a single lawsuit. This is particularly important where, as here, a large number of small and medium sized claimants may be involved. In light of the awesome costs of discovery and trial, many of them would not be able to secure relief if class certification were denied . . . . (Citations omitted.)

Furthermore, *Lake v. First Nationwide Bank,* 156 F.R.D. 615, 628-629 (E.D.Pa 1994) held that,

> given the relatively small amount recoverable by each potential litigant, it is unlikely that, absent the class action mechanism, any one individual would pursue his claim, or even be able to retain an attorney willing to bring the action. As Professors Wright, Miller and Kane have discussed, in analyzing consumer protection class actions such as the instant one, 'typically the individual claims are for small amounts, which means that the injured parties would not be able to bear the significant litigation expenses involved in suing a large corporation on an individual basis.
>
> These financial barriers may be overcome by permitting the suit to be brought by one or more consumers on behalf of others who are similarly situated.' 7B Wright et al., §1778, at 59; see *e.g.*, *Phillips Petroleum Co. v. Shutts,* 472 U.S. 797, 809 (1985) ('Class actions . . . may permit the plaintiff to pool claims which would be uneconomical to litigate individually.') The public interest in seeing that the rights of consumers are vindicated favors the disposition of the instant claims in a class action form.

Class certification will provide an efficient and appropriate resolution of the controversy. *Zanni v. Lippold,* 119 F.R.D. 32, 35 (C.D.Ill. 1988). Plaintiff's motion should be granted.

**IV.   CONCLUSION**

The proposed class meets the requirements of Rules 23(a) and 23(b)(3). Plaintiff respectfully requests that this Court certify a class of "all consumers to whom Defendant Ritz Camera provided an electronically printed receipt at the point of sale or transaction in a store located in Cook County Illinois , after December 4, 2006, which receipt displays (a) more than the last five digits of the person's credit card or debit card number, or (b) the expiration date of the person's creditor debit card or (c) both" and appoint the Law Offices of Keith J. Keogh, Ltd. as class counsel.

        Respectfully submitted,

        /s/ Alexander H. Burke

Keith J. Keogh
Alexander H. Burke
LAW OFFICES OF KEITH J. KEOGH, LTD.
227 W. Monroe Street, Suite 2000
Chicago, IL 60606
(312) 726-1092
(312) 726-1093 (fax)