## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| MARK THOMAS, individually | ) | |
| and on behalf of all other similarly situated | ) | |
| | ) | No. 08 C 453 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | JURY DEMANDED |
| RITZ CAMERA CENTERS, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## ANSWER OF DEFENDANT RITZ CAMERA CENTERS, INC.
## TO COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

### INTRODUCTION

1.      Plaintiff Mark Thomas brings this action to secure redress for the violation by Ritz Camera Centers, Inc., ("Ritz Camera"), of the Fair and Accurate Credit Transactions Act ("FACTA") amendment to the Fair Credit Reporting Act ("FCRA").

**ANSWER**:   RCCI admits that this action is purportedly brought by Plaintiff Mark Thomas for alleged violation by RCCI of the Fair and Accurate Credit Transactions Act ("FACTA" amendment to the Fair Credit Reporting Act ("FRCA"); except as expressly so admitted, RCCI denies each and every allegation contained therein.

2.      One provision of FACTA, codified as 15 U.S.C. § 1681c(g), provides that:

No person that accepts credit cards or debit cards for the transaction of business shall print more than the last 5 digits of the card number or the expiration date upon any receipt provided to the cardholder at the point of sale or transaction.

**ANSWER**:   RCC alleges that the referenced federal statute is the best evidence of its contents; further, the allegations contained in this Paragraph are legal conclusions not subject to answer; RCCI admits that 15 U.S.C. §§ 1681c(g), 1681n and 1681p contains the sentences

quoted in this Paragraph.  Except as expressly so admitted, RCCI denies each and every allegation contained herein.

3.      Section 1681c(g) is "not ambiguous," It "expressly prohibits printing more than the last five digits of the credit/debit card numbers and also prohibits printing the card's expiration date."  *Pirian v. In-N-Out Burgers*, 06-1251, 2007 U.S. Dist. LEXIS 25384, 8 (C.D.Cal. Apr. 5, 2007).

**ANSWER**:    RCCI alleges that the allegations contained in this Paragraph are legal conclusions not subject to answer.  RCCI admits that the referenced judicial decision contains the phrases quoted in this Paragraph.  Except as expressly so admitted, RCCI denies each and every allegation contained therein.

4.      The purpose of this "truncation requirement" is to prevent identity theft.  The Federal Trade Commission estimates that over 9 million persons each year have their identity assumed by criminals for financial gain, causing losses in excess of $50 billion.

**ANSWER**:    RCCI is without knowledge or information sufficient to form a belief as to the truth of the allegations in this Paragraph, and on that basis denies each and every allegation contained therein.

5.      One common modus operandi of identity thieves is to obtain credit card receipts that are lost or discarded, or through theft, and use the information on them to engage in transactions.  Identity thieves who do this are known as "carders" and "dumpster divers."  This *modus operandi* is more common than the use of sophisticated electronic means to obtain the information. Robin Sidel,  "Identity Theft—Unplugged--Despite the High-Tech Threat, When You Get Ripped Off It's Usually Still the Old Way, "Wall Street Journal, Oct. 5, 2006, p. 81.

**ANSWER**:    RCCI is without knowledge or information sufficient to form a belief as to the truth of the allegations in this Paragraph, and on that basis denies each and every allegation contained therein.

6.      It is possible for sophisticated identity thieves to replicate a credit card number using the expiration date and the last four digits of the card number.

**ANSWER**:    RCCI is without knowledge or information sufficient to form a belief as to the truth of the allegations in this Paragraph, and on that basis denies each and every allegation contained therein.

7.    The expiration date is generally necessary for misuse of the card number.

**ANSWER**:    RCCI is without knowledge or information sufficient to form a belief as to the truth of the allegations in this Paragraph, and on that basis denies each and every allegation contained therein.

8.    Merchants generally will not honor a credit card in a card-not-present transaction (telephone or Internet or fax) without both the correct expiration date and the card number Thieves therefore prefer to engage in such transactions to commit credit card fraud, so as to reduce the chances of apprehension.

**ANSWER**:    RCCI admits that it generally will not honor a credit card in a card-not-present transaction (telephone or Internet for fax) without both the correct expiration date and the card number; except as expressly so admitted, RCCI is without knowledge or information sufficient to form a belief as to the truth of the allegations in this Paragraph, and on that basis denies each and every allegation contained therein.

9.    To curb this means of identity theft, Congress prohibited merchants who accept credit cards and debit cards from issuing electronically-generated receipts that display either the expiration date or more than the last five digits of the card number.

**ANSWER**:    RCCI alleges that federal statutes are the best evidence of their contents, and that the allegations contained in this Paragraph are legal conclusions not subject to answer. Except as expressly so admitted, RCCI denies each and every allegation contained therein.

10.    The law gave merchants who accept credit cards and/or debit cards up to three years to comply with its requirements, requiring full compliance with its provisions no later than December 4, 2006.

3

**ANSWER**:    RCCI alleges that federal statutes are the best evidence of their contents,

and that the allegations contained in this Paragraph are legal conclusions not subject to answer.

Except as expressly so admitted, RCCI denies each and every allegation contained therein.

11.    Defendant has willfully violated this law and failed to protect plaintiff and others similarly situated against identity theft and credit card and debit card fraud by failing to comply with the truncation requirement.

**ANSWER**:  RCCI denies each and every allegation contained therein.

12.    A willful violation includes reckless disregard.

**ANSWER**:    RCCI alleges that federal statutes are the best evidence of their contents,

and that the allegations contained in this Paragraph are legal conclusions not subject to answer.

Except as expressly so admitted, RCCI denies each and every allegation contained therein.

13.    Plaintiff brings this action against defendant based on defendant's violation of 15 U.S.C. § 1681c(g) et seq. Plaintiff seeks statutory damages, attorneys fees, costs, and such other relief as the Court deems proper, including punitive damages.

**ANSWER**:    RCCI admits that this action is purportedly based upon 15 U.S.C.

§ 1681c(g), et seq. and that Plaintiff claims to be seeking statutory damages, attorney fees, costs,

and other relief, including punitive damages; except as expressly so admitted, RCCI denies each

and every allegation contained therein.

## JURISDICTION AND VENUE

14.    This Court has subject matter jurisdiction under 28 U.S.C. §1331 (federal question) and 15 U.S.C. § 1681p (FCRA).

**ANSWER**:    RCCI admits that this action is purportedly brought pursuant to 28 U.S.C.

admits that venue in this action is purportedly based on 28 U.S.C. § 1331 and `15 U.S.C. §

1681p.

15.    Venue in this district is proper because defendant does business here.

**ANSWER**:    RCCI admits that it does business in this judicial district.

## PARTIES

16.     Plaintiff, Mark Thomas is a resident of this District.

**ANSWER:**     RCCI is without knowledge or information sufficient to form a belief as to the truth of the allegations in this Paragraph, and on that basis denies each and every allegation contained therein.

17.     Mr. Thomas is a former victim of identity theft.

**ANSWER:**     RCCI is without knowledge or information sufficient to form a belief as to the truth of the allegations in this Paragraph, and on that basis denies each and every allegation contained therein.

18.     Defendant Ritz Camera is a retailer of cameras and photographic supplies.

**ANSWER:**     RCCI admits the allegations contained therein.

19.     Defendant Ritz Camera is a "person that accepts credit cards or debit cards for the transaction of business" within the meaning of FACTA,

**ANSWER:**     RCCI admits the allegations contained therein.

## FACTS

20.     On December 20, 2006, plaintiff received from Ritz Camera at its 2255 W. 95th Street store in Chicago, a computer generated register receipt which displayed his expiration date.

**ANSWER:**     RCCI denies each and every allegation contained therein.

## CLASS ALLEGATIONS

21.     Plaintiff brings this action on behalf of a class pursuant to Fed.R.Civ.F. 23(a) and (b)(3).

**ANSWER:**     RCCI admits that Plaintiff purports to allege that he brings this action on behalf of himself and others and purports to define a class; except as expressly so admitted, RCCI denies that the allegations in this Paragraph meet the requirements of Federal Rule of Civil Procedure 23.  RCCI is without knowledge or information sufficient to form a belief as to the

truth of remaining allegations in this Paragraph, and on this basis denies each and every allegation contained therein.

22.    The class is defined as all consumers to whom Defendant Ritz Camera provided an electronically printed receipt at the point of sale or transaction in a store located in Cook County Illinois , after December 4, 2006, which receipt displays (a) more than the last five digits of the person's credit card or debit card number, or (b) the expiration date of the person's creditor debit card or (c) both.

**ANSWER**:    RCCI admits that Plaintiff purports to allege that he brings this action on behalf of himself and others and purports to define a class; except as expressly so admitted, RCCI denies that the allegations in this Paragraph meets the requirements of Federal Rule of Civil Procedure 23.  RCCI is without knowledge or information sufficient to form a belief as to the truth of remaining allegations in this Paragraph, and on this basis denies each and every allegation contained therein.

23.    The class is so numerous that joinder of all individual members in one action would be impracticable.

**ANSWER**:    RCCI alleges that federal statutes are the best evidence of their contents, and that the allegations contained in this Paragraph are legal conclusions not subject to answer. To the extent a response is required, RCCI is without knowledge or information sufficient to form a belief as to the truth of the allegations in this Paragraph, and on this basis denies each and every allegation contained therein.

24.    On information and belief, there are over 100 consumers to whom Defendant Ritz Camera provided an electronically printed receipt at the point of sale or transaction after December 4, 2006, which receipt displays (a) more than the last five digits of the person's credit card or debit card number, or (b) the expiration date of the person's credit or debit card or (c) both.

**ANSWER**:    RCCI admits the allegations contained therein.

25.    Plaintiff's claims are typical of the claims of the class members.  All are based on the same legal theories and arise from the same unlawful and willful conduct.

**ANSWER**:    RCCI admits that Plaintiff purports to allege that he brings this action on behalf of himself and others and purports to define a class; except as expressly so admitted, RCCI denies that the allegations in this Paragraph meet the requirements of Federal Rule of Civil Procedure 23.  RCCI is without knowledge or information sufficient to form a belief as to the truth of remaining allegations in this Paragraph, and on this basis denies each and every allegation contained therein.

26.    There are common questions of fact and law affecting members of the class, which common questions predominate over questions which may affect individual members. These include the following:

      a.     Whether defendant had a practice of providing customers with a sales or transaction receipt which failed to comply with the truncation requirement.

      b.     Whether defendant thereby violated FACTA;

      c.     Whether defendant's conduct was willful; and

**ANSWER**:    RCCI admits that Plaintiff purports to allege that he brings this action on behalf of himself and others and purports to define a class; except as expressly so admitted, RCCI denies that the allegations in this Paragraph meet the requirements of Federal Rule of Civil Procedure 23.  RCCI is without knowledge or information sufficient to form a belief as to the truth of remaining allegations in this Paragraph, and on this basis denies each and every allegation contained therein.

27.    Plaintiff will fairly and adequately represent the class members.  Plaintiff has no interests that conflict with the interests of the class members.  Plaintiff has retained experienced counsel.

**ANSWER**:    RCCI admits that Plaintiff purports to allege that he brings this action on behalf of himself and others and purports to define a class; except as expressly so admitted, RCCI denies that the allegations in this Paragraph meet the requirements of Federal Rule of Civil Procedure 23.  RCCI is without knowledge or information sufficient to form a belief as to the

truth of remaining allegations in these Paragraphs, and on this basis denies each and every

allegation contained therein.

28.    A class action is superior to other available means for the fair and efficient adjudication of the claims of the class members.   Individual actions are not economically feasible.

**ANSWER:**    RCCI admits that Plaintiff purports to allege that he brings this action on

behalf of himself and others and purports to define a class; except as expressly so admitted,

RCCI denies that the allegations in this Paragraph meet the requirements of Federal Rule of Civil

Procedure 23.   RCCI is without knowledge or information sufficient to form a belief as to the

truth of remaining allegations in these Paragraphs, and on this basis denies each and every

allegation contained therein.

### VIOLATIONS ALLEGED

29.    Defendant violated 15 U.S.C. §1681c(g)(1), which provides that:

no person that accepts credit cards or debit cards for the transaction of business shall print more than the last five digits of the card number or the expiration date upon any receipt provided to the cardholder at the point of sale or transaction.

**ANSWER:**    RCC alleges that the referenced federal statute is the best evidence of its

contents; further, the allegations contained in this Paragraph are legal conclusions not subject to

answer; RCCI admits that 15 U.S.C. §§ 1681c(g), 1681n and 1681p contains the sentences

quoted in this Paragraph.   Except as expressly so admitted, RCCI denies each and every

allegation contained herein.

30.    With respect to machines that were first put into use after January 1, 2005, 15 U.S.C.   § 1681c(g)(3)(B) required immediate   compliance   with   the   provisions   of 15 U.S.C.§ 1681 c(g)(1).

**ANSWER:**    RCC alleges that the referenced federal statute is the best evidence of its

contents; further, the allegations contained in this Paragraph are legal conclusions not subject to

answer; RCCI admits that 15 U.S.C. §§ 1681c(g), 1681n and 1681p contains the sentences

quoted in this Paragraph. Except as expressly so admitted, RCCI denies each and every allegation contained herein.

31.    With respect to machines that were in use before January 1, 2005, 15 U.S.C. § 1681c(g)(3)(B) required compliance with the provisions of 15 U.S.C. § 168lc(g)(1) on or after December 4, 2006.

**ANSWER**:    RCCI alleges that the allegations contained in this Paragraph are legal conclusions not subject to answer. RCCI admits that the referenced judicial decision contains the phrases quoted in this Paragraph. Except as expressly so admitted, RCCI denies each and every allegation contained therein.

32.    Defendant accepts credit cards and/or debit cards in the course of transacting business with persons such as plaintiff and the class members. In transacting such business, defendant uses cash registers and/or other machines or devices that electronically print receipts for credit card and/or debit card transactions.

**ANSWER**:    RCCI alleges that the allegations contained in this Paragraph are legal conclusions not subject to answer. RCCI admits that the referenced judicial decision contains the phrases quoted in this Paragraph. Except as expressly so admitted, RCCI denies each and every allegation contained therein.

33.    After the effective date of the statute, defendant, at the point of sale or transaction, provided plaintiff and each class member with one or more electronically printed receipts on each of which defendant failed to comply with the truncation requirement.

**ANSWER**:    RCCI denies each and every allegation contained therein.

34.    FACTA was enacted in 2003 and gave merchants who accept credit card and/or debit cards up to three years to comply with its requirements, requiring compliance for all machines no later than December 4, 2006.

**ANSWER**:    RCCI alleges that the allegations contained in this Paragraph are legal conclusions not subject to answer. RCCI admits that the referenced judicial decision contains the phrases quoted in this Paragraph. Except as expressly so admitted, RCCI denies each and every allegation contained therein.

35.    Defendant knew or should have known of the truncation requirement.

**ANSWER**:    RCCI denies each and every allegation contained therein.

36.    VISA, MasterCard, the PCI Security Standards Council - a consortium founded by VISA, MasterCard, Discover, American Express and JCB companies that sell cash registers and other devices for the processing of credit or debit card payments, and other entities informed defendant about FACTA, including its specific requirements concerning the truncation of credit card and debit card numbers and prohibition on the printing of expiration dates, and defendant's need to comply with the same.

**ANSWER**:    RCCI denies each and every allegation contained therein.

37.    The requirement was widely publicized among retailers.

**ANSWER**:    RCCI is without knowledge or information sufficient to form a belief as to the truth of the allegations in this Paragraph, and on that basis denies each and every allegation contained therein.

38.    For example, in response to earlier state legislation enacting similar truncation requirements, on March 6, 2003, the CEO of Visa USA, Carl Pascarella, explained that "Today, I am proud to announce an additional measure to combat identity theft and protect consumers. Our new receipt truncation policy soon limit cardholder information on receipts to the last four digits of their accounts. The cards expiration date will be eliminated from receipts altogether. . . . The first phase of this new policy goes into effect July 1, 2003 for all new terminals. . . ."Visa USA Announces Account Truncation Initiative to Protect Consumers from ID Theft; Visa CEO Announces New Initiative at Press Conference With Sen. Dianne Feinstein," PR Newswire, March 6, 2003.

**ANSWER**:    RCCI is without knowledge or information sufficient to form a belief as to the truth of the allegations in this Paragraph, and on that basis denies each and every allegation contained therein.

39.    Within 24 hours, MasterCard and American Express announced they were imposing similar requirements.

**ANSWER**:    RCCI is without knowledge or information sufficient to form a belief as to the truth of the allegations in this Paragraph, and on that basis denies each and every allegation contained therein.

40.    The card issuing organizations proceeded to require compliance with FACTA by contract, in advance of FACTA's mandatory compliance date.

**ANSWER:**    RCCI is without knowledge or information sufficient to form a belief as to the truth of the allegations in this Paragraph, and on that basis denies each and every allegation contained therein.

41.    For example, the August 12, 2006 edition of "Rules for Visa Merchants" (p. 62), which is distributed to and binding upon all merchants that accept Visa cards, expressly requires that "only the last four digits of an account number should be printed on the customer's copy of the receipt" and "the expiration date should not appear at all." These statements were accompanied by a picture of a receipt showing precisely what had to be removed. VISA required complete compliance by July 1, 2006, five months ahead of the statutory deadline.

**ANSWER:**    RCCI is without knowledge or information sufficient to form a belief as to the truth of the allegations in this Paragraph, and on that basis denies each and every allegation contained therein.

42.    Defendant accepts Visa cards and is a party to a contract requiring compliance with the above-quoted requirement.

**ANSWER:**    RCCI denies each and every allegation contained therein.

43.    American Express has a manual that contains a similar depiction of what information must be suppressed.

**ANSWER:**    RCCI is without knowledge or information sufficient to form a belief as to the truth of the allegations in this Paragraph, and on that basis denies each and every allegation contained therein.

44.    These requirements were widely publicized. The following are illustrative.

**ANSWER:**    RCCI is without knowledge or information sufficient to form a belief as to the truth of the allegations in this Paragraph, and on that basis denies each and every allegation contained therein.

45.    On July 9, 2003, L. Richard Fischer of VISA USA presented a written statement to the House Committee on Financial Services supporting the truncation requirements of what ultimately became FACTA. Mr. Fischer stated: Although Visa generally believes that the

details of preventing identity theft should be left to financial institutions that are best suited to address ever evolving fraud techniques, Title II could provide important benefits to consumers and financial institutions alike by establishing workable identity theft provisions and ensuring that these provisions benefit from national uniformity. For example, Section 203 of Title II would prohibit any merchant or other entity that accepts credit and debit cards from printing more than the last four digits of the card account number or the expiration date upon receipts provided to cardholders at the point of sale.

**ANSWER:**    RCCI is without knowledge or information sufficient to form a belief as to

the truth of the allegations in this Paragraph, and on that basis denies each and every allegation

contained therein.

46.    The Office of Thrift Supervision of the Treasury Department ("OTS"), is responsible, inter alia, for compliance with FACTA by Federal savings banks. Toward this end, the OTS publishes an Examination Handbook for OTS field personnel to use when they perform an examination, or compliance audit, of a given financial institution. The February 2006 edition of the Handbook states:

## Truncation of Credit and Debit Card Account Numbers

Ensure that electronically generated receipts from ATM and POS terminals or other machines do not contain more than the last five digits of the card number and do not contain the expiration dates.

**ANSWER:**    RCCI is without knowledge or information sufficient to form a belief as to

the truth of the allegations in this Paragraph, and on that basis denies each and every allegation

contained therein.

47.    Heartland Payment Systems, Inc. provides credit and debit card, payroll and related processing services to restaurant, hotel and retail merchants throughout the United States, and indicates on its website that it provides services to over 137,000 merchants. In 2003, Heartland broadly disseminated a pamphlet which included the following statement:

Your credit card terminal is now-or will soon be required by law or the bankcard associations to truncate-or limit-the information that can appear on electronically printed sales receipts.

What that means is that on all cardholder numbers:

o    The expiration date must be eliminated
o    All but the last four numbers of the card number must be obscured

**ANSWER:**    RCCI is without knowledge or information sufficient to form a belief as to the truth of the allegations in this Paragraph, and on that basis denies each and every allegation contained therein.

48.    In 2006, Heartland broadly disseminated a second pamphlet, which included the following statement:

**Make every transaction a safe one. * * ***

o    The cardholder's receipt *should not include* the card's expiration date and *should only include* the last 4 or 5 digits of the card number. * * * *

**ANSWER:**    RCCI is without knowledge or information sufficient to form a belief as to the truth of the allegations in this Paragraph, and on that basis denies each and every allegation contained therein.

49.    Another credit card processor, Commerce Bank, sent "Merchant Compliance Awareness" notices to its customers during 2004. These stated that all but the last four digits of the cardholder account number and the entire expiration date had to be suppressed from the receipt.

**ANSWER:**    RCCI is without knowledge or information sufficient to form a belief as to the truth of the allegations in this Paragraph, and on that basis denies each and every allegation contained therein.

50.    Many restaurant and retail trade associations apprised their merchant members that FACTA imposed truncation requirements mirroring Visa's truncation requirements. For example, the Virginia Retail Merchants Association reported in its February/March 2005 Newsletter that "FACTA says receipts for credit and debit card transactions may not include more than the last five digits of the card number or expiration date."

**ANSWER:**    RCCI is without knowledge or information sufficient to form a belief as to the truth of the allegations in this Paragraph, and on that basis denies each and every allegation contained therein.

51.    In the April 23, 2003 edition of the monthly magazine for the National Association of Convenience Stores, an article titled "Visa USA Targets Identity Theft," appeared which included the following statement:

13

[Alt a press conference held last month with Sen. Dianne Feinstein (D-CA), Visa announced its account truncation security policy. This protects consumers from identity theft by limiting cardholders' information on receipts to the last four digits of their accounts. The policy will also eliminate the card's expiration date from receipts altogether. Feinstein has introduced legislation to combat identity theft.

**ANSWER:**    RCCI is without knowledge or information sufficient to form a belief as to

the truth of the allegations in this Paragraph, and on that basis denies each and every allegation

contained therein.

52.    The April 2005 edition of the Food Industry Advisor, the newsletter for the Pennsylvania Food Merchants Association and Pennsylvania convenience Store Council, included an article regarding the requirements of credit card truncation under FACTA which included the following language:

[A]ccording to the FACTA Act, no person that accepts credit cards or debit cards for the transaction of business shall print more than the last 5 digits of the card number or the expiration date upon any receipt provided to the cardholder at the point of sale or transaction.

The same article appeared in the April 2005 Edition of the NACS Magazine, published by the National Association of Convenience Stores.

**ANSWER:**    RCCI is without knowledge or information sufficient to form a belief as to

the truth of the allegations in this Paragraph, and on that basis denies each and every allegation

contained therein.

53.    In its Spring 2004 Newsletter, the Connecticut Restaurant Association Newsletter included an article regarding Requirements for Credit Card Truncation, which stated:

[T]here is currently no Connecticut state law, so the two ruling requirements come from VISA and a new Federal Fair Credit Reporting Act signed in December 2003.

Truncation requires that all but the last four digits of the cardholder account number, along with the entire expiration date, be suppressed on the cardholder copy of the transaction receipt generated from all electronic terminals....

**ANSWER**:    RCCI is without knowledge or information sufficient to form a belief as to the truth of the allegations in this Paragraph, and on that basis denies each and every allegation contained therein.

54.    After the enactment of FACTA, the Wisconsin Restaurant Association issued a "Credit Card Transaction" Alert to its members, which stated:

> You may have been hearing about credit card truncation lately.  This is what you need to know.

> Credit card truncation removes all but the last four (or five) digits of a credit card account number ad the expiration date from the sales receipt.  For example: A non - truncated receipt would list:

> Acct. # 1234 5678 7654 3210 Exp. 10/05

> while a truncated receipt would show:

> Acct. # **** **** **** 3210 Exp ****

> The federal Fair and Accurate Credit Transaction Act of 2003, prohibits any person that accepts credit cards or debit cards from printing the expiration date and more than the last five digits of the card number upon any terminal-generated receipt provided to the cardholder at the point of sale....

**ANSWER**:    RCCI is without knowledge or information sufficient to form a belief as to the truth of the allegations in this Paragraph, and on that basis denies each and every allegation contained therein.

55.    In the January 2005 edition of the Massachusetts Restaurant Association Newsletter, an article appeared apprising Association members that both Visa and MasterCard require truncation of the entire expiration date and all but the last four digits of the cardholder account number.

**ANSWER**:    RCCI is without knowledge or information sufficient to form a belief as to the truth of the allegations in this Paragraph, and on that basis denies each and every allegation contained therein.

56.    Similar information was disseminated by the Ohio Restaurant Association, the Oklahoma Restaurant Association, and a significant number of other restaurant trade associations, and retail merchant trade associations.

**ANSWER**:    RCCI is without knowledge or information sufficient to form a belief as to

the truth of the allegations in this Paragraph, and on that basis denies each and every allegation

contained therein.

57.    In the March/April 2006 Edition of the Ohio Independent Automobile Dealers'
Association Dealer News Magazine, and Article was published entitled "What You Should
Know about Credit and Debit Card Processing and the FACTAs about Card Truncation." The
article states:

> What is Card Truncation?  This federal law sets deadlines by which the receipt
> electronically printed from a credit card sale must be truncated-meaning, the
> receipt given to the customer shows no more than the last five digits of the
> customer's credit card number and does not show the expiration date.

Business owners are responsible for merchant account compliance with the truncation
regulations and must make sure their printed cardholder receipts do not contain expiration dates
or full account numbers.  This same article appeared in the March/April edition of the West
Coast Independent Automobile Dealer News.

**ANSWER**:    RCCI is without knowledge or information sufficient to form a belief as to

the truth of the allegations in this Paragraph, and on that basis denies each and every allegation

contained therein.

58.    The Independent Insurance Agents & Brokers of America circulated a report to its
members dated June 5, 2005 titled: "Overview of the Fair Credit Reporting Act, The Fair and
Accurate Credit Transactions Act, and the Drivers Privacy Protection Act."  In relevant part, this
publication stated:

> Under the FACT Act, businesses and others accepting credit or debit cards for
> payment may not print more than the last five digits of the card number nor may
> they print the expiration date upon any receipt provided to the cardholder at the
> point of sale.

**ANSWER**:    RCCI is without knowledge or information sufficient to form a belief as to

the truth of the allegations in this Paragraph, and on that basis denies each and every allegation

contained therein.

59.    The November 18, 2004 edition of the Compliance Challenge, published by the
Credit Union National Association News, stated: "PACTA prohibits anyone that accepts
credit/debit cards to print more than the last S digits of the card number or expiration date on any
receipt at the point of sale or transaction.

**ANSWER**:    RCCI is without knowledge or information sufficient to form a belief as to

the truth of the allegations in this Paragraph, and on that basis denies each and every allegation

contained therein.

60.    In the October 10, 2003, edition of the PT Bulletin, a Newsletter for the American
Physical Therapy Association, an article appeared titled, "Truncation Requirement Now in Effect
for Credit Card Processing." In relevant part, this article stated:

> Physical therapists who accept credit card payments from patients and clients face
> new processing requirements from major credit card companies. In an effort to
> minimize opportunities for credit card fraud, Visa and MasterCard...have
> mandated that credit card account numbers and expiration dates be masked on all
> receipts. Compliance with this requirement is not optional....

**ANSWER**:    RCCI is without knowledge or information sufficient to form a belief as to

the truth of the allegations in this Paragraph, and on that basis denies each and every allegation

contained therein.

61.    Truncation standards, including the standards reflected in the Visa Merchant
umbers on the receipt presented to customers at the point of sale. The publication of this
minimal amount of account information is necessary to facilitate merchant account
reconciliation, processing of returns, etc. In isolation, the publication of only the last four or five
digits of a customer account number significantly limits the extent to which a potential identity
thief can effectively use customer receipts disseminated at the point of sale to facilitate identity
theft.

**ANSWER**:    RCCI is without knowledge or information sufficient to form a belief as to

the truth of the allegations in this Paragraph, and on that basis denies each and every allegation

contained therein.

62.    The publication of expiration dates on customer receipts disseminated at the point
of sale, in addition to the last four or five digits of the customer account number, exponentially
increases the possibility of identity theft, which is the obvious reason that Visa, and then
Congress, requires the truncation of expiration dates.

**ANSWER**:    RCCI is without knowledge or information sufficient to form a belief as to

the truth of the allegations in this Paragraph, and on that basis denies each and every allegation

contained therein.

63.    Credit and debit card account numbers are not randomly generated.   Instead, account numbers reflect an internal coding scheme set forth by the International Organization for Standardization ("ISO") 7812, which defines the content in the cards' magnetic strips.  Consistent with this standard, every credit card number consists of the following:  (a) a single digit Major Industry Identifier ("MII"); (b) an issuer identification number ("IIN"); (c) an number unique to the card; and (d) a check digit.

**ANSWER**:    RCCI is without knowledge or information sufficient to form a belief as to

the truth of the allegations in this Paragraph, and on that basis denies each and every allegation

contained therein.

64.    The MII identifies the industry of the issuer of the card, e.g., MasterCard, Visa, etc.

**ANSWER**:    RCCI is without knowledge or information sufficient to form a belief as to

the truth of the allegations in this Paragraph, and on that basis denies each and every allegation

contained therein.

65.    The IIN consists of the first six digits of the card number and identifies the specific issuer of the card.

**ANSWER**:    RCCI is without knowledge or information sufficient to form a belief as to

the truth of the allegations in this Paragraph, and on that basis denies each and every allegation

contained therein.

66.    The seventh through next to the last digit, up to a maximum of 12 digits, is the number unique to the card.

**ANSWER**:    RCCI is without knowledge or information sufficient to form a belief as to

the truth of the allegations in this Paragraph, and on that basis denies each and every allegation

contained therein.

67.    The last digit is a "check digit" that is not randomly assigned, but instead is calculated by a defined algorithm.  Therefore, the "check digit" is derivative of the other numbers in the credit card number.

18

**ANSWER:** RCCI is without knowledge or information sufficient to form a belief as to the truth of the allegations in this Paragraph, and on that basis denies each and every allegation contained therein.

68. Astute identity thieves are familiar with this coding paradigm and can use sophisticated mathematical modeling to decipher account numbers.

**ANSWER:** RCCI is without knowledge or information sufficient to form a belief as to the truth of the allegations in this Paragraph, and on that basis denies each and every allegation contained therein.

69. To the extent that an identity thief is able to decipher a credit card user's account number, the importance of truncating expiration dates becomes manifest. That is, unlike the account number on the credit or debit card, the expiration date cannot be deciphered through sophisticated mathematical modeling. Therefore, the expiration date is an important security check that corroborates that a person attempting to use a given account number is actually the authorized user of the card.

**ANSWER:** RCCI is without knowledge or information sufficient to form a belief as to the truth of the allegations in this Paragraph, and on that basis denies each and every allegation contained therein.

70. The expiration dates are also used to confirm that a person making a purchase over the phone or on the internet actually has the card in their possession.

**ANSWER:** RCCI admits the allegations contained therein.

71. Banks and credit card associations (i.e. Visa, MasterCard, American Express, etc.) are keenly aware of the importance of truncating expiration dates.

**ANSWER:** RCCI is without knowledge or information sufficient to form a belief as to the truth of the allegations in this Paragraph, and on that basis denies each and every allegation contained therein.

72. In addition, a would be identity thief who steals o receipt containing the last four or five digits of a credit card account number and an expiration date can use that data in an attempt to dupe the cardholder, or other potential information sources, into disclosing additional confidential financial information relating to the cardholder. The more information that is disclosed on the receipt, the easier it is to pilfer additional confidential financial information.

19

**ANSWER:**   RCCI is without knowledge or information sufficient to form a belief as to the truth of the allegations in this Paragraph, and on that basis denies each and every allegation contained therein.

73.   The costs of truncating credit and/or expiration dates and account numbers is minimal.

**ANSWER:**   RCCI denies each and every allegation contained therein.

74.   Most of defendant's business peers and competitors readily brought their credit card and debit card receipt printing process into compliance with FACTA by programming their card machines and devices to comply with the truncation requirement. Defendant could have readily done the same.

**ANSWER:**   RCCI is without knowledge or information sufficient to form a belief as to the truth of the allegations in the first sentence in this Paragraph, and on that basis denies each and every allegation contained therein.   RCCI denies each and every remaining allegation contained in this Paragraph.

75.   Defendant willfully disregarded FACTA's requirements and continued to use cash registers or other machines or devices that print receipts in violation of FACTA.

**ANSWER:**   RCCI denies each and every allegation contained therein.

76.   The FCRA, 15 U.S.C. §1681n, provides:

**§1681n. Civil liability for willful noncompliance**

**(a) In general. Any person who willfully fails to comply with any requirement imposed under this title [15 U.S.C. §§1681 et seq.] with respect to any consumer is liable to that consumer in an amount equal to the sum of--**

**(1)**

**(A) any actual damages sustained by the consumer as a result of the failure or damages of not less than $100 and not more than $1,000;**

**(2)   such amount of punitive damages as the court may allow; and**

**(3)   in the case of any successful action to enforce any liability under this section, the costs of the action together with reasonable attorney's fees as determined by the court. . . .**

**ANSWER**:    RCC alleges that the referenced federal statute is the best evidence of its contents; further, the allegations contained in this Paragraph are legal conclusions not subject to answer; RCCI admits that 15 U.S.C. §§ 1681c(g), 1681n and 1681p contains the sentences quoted in this Paragraph.    Except as expressly so admitted, RCCI denies each and every allegation contained herein.

77.    The FCRA, 15 U.S.C. §1681p, provides:

**§ 1681p. Jurisdiction of courts; limitation of actions**

**An action to enforce any liability created under this title [15 U.S.C. §1681 et seq.] may be brought In any appropriate United States district court, without regard to the amount in controversy, or in any other court of competent jurisdiction, not later than the earlier of--**

> **(1)    2 years after the date of discovery by the plaintiff of the violation that is the basis for such liability; or**

> **(2)    5 years after the date on which the violation that is the basis for such liability occurs.**

**ANSWER**:    RCC alleges that the referenced federal statute is the best evidence of its contents; further, the allegations contained in this Paragraph are legal conclusions not subject to answer; RCCI admits that 15 U.S.C. §§ 1681c(g), 1681n and 1681p contains the sentences quoted in this Paragraph.    Except as expressly so admitted, RCCI denies each and every allegation contained herein.

## AFFIRMATIVE DEFENSES

First Defense—Failure to State a Claim

The Complaint, including each purported cause of action therein, fails to state a claim upon which relief can be granted.

Second Defense—Lack of Willfulness

The claims of the named Plaintiff on his own behalf and on behalf of the putative class members (collectively, for the purposes of these Affirmative Defenses, the "plaintiffs") are barred, in whole or in part, by the absence of willfulness of conduct by RCCI.

Third Defense—Primary Jurisdiction

Plaintiffs' claims fall within the primary jurisdiction of the Federal Trade Commission.

Fourth Defense—Lack of Standing

Plaintiffs lack standing to assert these claims because, *inter alia*, they have sustained no injuries.

Fifth Defense—Mootness

Upon information and belief, claims of many putative class members are moot because RCCI has complied with FACTA with respect to credit card or debit card receipts provided to such persons.

Sixth Defense—Fault of Others

Upon information and belief, if plaintiffs sustained damages, which is denied, the damages were caused solely by or contributed to by the acts and fault of third parties and were not caused or contributed to by any acts or fault of RCCI.

Seventh Defense—Disclaimer of Liability for Consequential and other Damages

Plaintiffs' claims are barred in whole or in part to the extent RCCI disclaimed liability for any consequential damages, loss of time or inconvenience arising from transactions with RCCI..

Eighth Defense—Failure to Mitigate Damages

Plaintiffs have failed, in whole or in part, to mitigate their alleged damages.

Ninth Defense—Constitutionality of Punitive Damages

Plaintiffs' request for punitive damages cannot be sustained because an award of punitive damages by a jury that (1) is not provided constitutionally adequate standards of sufficient clarity for determining the appropriate imposition of, and the appropriate size of, a punitive damages awarded, (2) is not adequately instructed on the limits of punitive damages imposed by the applicable principles of deterrence and punishment, (3) is not expressly prohibited from awarding punitive damages, or determining the amount of an award of punitive damages, in whole or in part on the basis of invidiously discriminatory characteristics, including without limitation the residence, wealth, and corporate status of RCCI, (4) is permitted to award punitive damages under a standard for determining liability for punitive damages that is vague and arbitrary and does not define with sufficient clarity the conduct or mental state that makes punitive damages permissible, (5) is not properly instructed regarding plaintiffs' burden of proof with respect to each and every element of a claim for punitive damages, or (6) is not subject to trial court and appellate judicial review for reasonableness and furtherance of legitimate purposes on the basis of constitutionally adequate and objective standards violates RCCI's due process and equal protection rights guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution, and would be improper under the common law and public policies of the United States.

Plaintiffs' request for punitive damages also cannot be sustained because the applicable laws regarding the standards for determining liability for and the amount of punitive damages fail to give RCCI prior notice of the conduct for which punitive damages may be imposed and the severity of the penalty that may be imposed and are void for vagueness in violation of RCCI's due process rights guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution.

23

Further, plaintiffs' request for punitive damages against RCCI cannot be sustained, because an award of punitive damages, subject to no predetermined limit, such as a maximum multiple of compensatory damages or a maximum limit on the amount of punitive damages that may be imposed, or assessed without a reasonable relationship to the reprehensibility proven as to RCCI's conduct, or assessed without a relationship to the financial condition of RCCI, would violate RCCI's due process rights guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution, would violate RCCI's right not to be subjected to an excessive award in violation of the Eighth Amendment to the United States Constitution, and would be improper under the common law.

Moreover, plaintiffs' request for punitive damages against RCCI cannot be sustained, because an award of punitive damages exceeding the limits authorized by the criminal laws or other comparable laws would violate RCCI's due process and equal protection rights guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution, and would be improper under the common law.

Plaintiffs' request for punitive damages against RCCI also cannot be sustained because any award of punitive damages under applicable law, which would be penal in nature, without affording RCCI the same protections that are afforded to all criminal defendants, including the protection against self-incrimination, and the burden of proof against such defendants of proof beyond a reasonable doubt, *inter alia*, would violate RCCI's rights guaranteed under the Fourth, Fifth, and Sixth Amendments as incorporated into the Fourteenth Amendment to the United States Constitution, and would be improper under the common law.

RCCI further states that the Complaint fails to state sufficient facts to support the prayer for punitive damages against RCCI.

Tenth Defense—Constitutionality of Civil Penalty/Statutory Damages

Plaintiffs' request for a civil penalty in the form of statutory damages cannot be sustained because an award of civil penalty/statutory damages would operate in this litigation in the same manner and for the same purposes as punitive damages, and an award by a court or jury that (1) is not provided constitutionally adequate standards of sufficient clarity for determining the appropriate imposition of, and the appropriate size of, a punitive damages awarded, (2) is not adequately instructed on the limits of punitive damages imposed by the applicable principles of deterrence and punishment, (3) is not expressly prohibited from awarding punitive damages, or determining the amount of an award of punitive damages, in whole or in part on the basis of invidiously discriminatory characteristics, including without limitation the residence, wealth, and corporate status of RCCI, (4) is permitted to award punitive damages under a standard for determining liability for punitive damages that is vague and arbitrary and does not define with sufficient clarity the conduct or mental state that makes punitive damages permissible, (5) is not properly instructed regarding Plaintiffs' burden of proof with respect to each and every element of a claim for punitive damages, or (6) is not subject to trial court and appellate judicial review for reasonableness and furtherance of legitimate purposes on the basis of constitutionally adequate and objective standards violates RCCI's due process and equal protection rights guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution, and would be improper under the common law and public policies of the United States.

Further, plaintiffs' request for civil penalties/statutory damages, like its request for punitive damages against RCCI cannot be sustained, because an award of civil penalties or punitive damages, subject to an excessive maximum multiple of violations and an excessive maximum limit on the amount of civil penalties that may be imposed, or assessed without a

reasonable relationship to the reprehensibility proven as to RCCI's conduct, or assessed without a relationship to the financial condition of RCCI,   would violate RCCI's due process rights guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution, and, though misnomered as civil penalties, would violate RCCI's right not to be subjected to an excessive award in violation of the Eighth Amendment to the United States Constitution, and would be improper under the common law.

 Moreover, plaintiffs' request for civil penalties against RCCI cannot be sustained, because an award of misnomered civil penalties/statutory damages, like an award of punitive damages, exceeding the limits authorized by the criminal laws or other comparable laws would violate RCCI's due process and equal protection rights guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution, and would be improper under the common law.

Plaintiffs' request for misnomered civil penalties/statutory damages against RCCI also cannot be sustained because any civil penalties, like an award of punitive damages under applicable law, would be penal in nature, without affording RCCI the same protections that are afforded to all criminal defendants, including the protection against self-incrimination, and the burden of proof against such defendants of proof beyond a reasonable doubt, *inter alia*, would violate RCCI's rights guaranteed under the Fourth, Fifth, and Sixth Amendments as incorporated into the Fourteenth Amendment to the United States Constitution, and would be improper under the common law.

RCCI further states that the Complaint fails to state sufficient facts to support the prayer for civil penalties/statutory damages against RCCI.

Eleventh Defense—Notice of Additional Affirmative Defenses

RCCI hereby gives notice that it intends to rely upon such other affirmative defenses as may become available or apparent during the course of discovery and thus reserves the right to amend this Answer to assert such defenses.

WHEREFORE, RCCI demands judgment dismissing the Complaint, awarding to RCCI its costs of suits, attorneys fees to the extent recoverable under law, and such other and further relief as this Court may deem just and proper.

Dated:  February 19, 2008

HOLLAND & KNIGHT LLP

By:    /s/*Suzanne E. Rollier*
Attorneys for Defendant
Ritz Camera Centers, Inc.

Richard T. Williams
ARDC No. 52896 (California)
Holland & Knight LLP
633 W. Fifth Street, 21st. Floor
Los Angeles, California 90071
213-896-2400

Suzanne E. Rollier
ARDC No. 283865 (Illinois)
Holland & Knight LLP
131 S. Dearborn Street, 30th Floor
Chicago, Illinois 60603
312-263-3600

## CERTIFICATE OF SERVICE

I, the undersigned, an attorney depose and state that I served **Defendant Ritz Camera Centers, Inc.'s Answer to Plaintiff's Complaint for Damages and Injunctive Relief** , via electronic filing and that service was accomplished pursuant to the ECF for filing users and that non-participants were served as required by L.R. 5.5.

HOLLAND & KNIGHT LLP

By:     /s/*Suzanne E. Rollier*
        Attorneys for Defendant
        Ritz Camera Centers, Inc.

Richard T. Williams
ARDC No. 52896 (California)
Holland & Knight LLP
633 W. Fifth Street, 21st. Floor
Los Angeles, California  90071
213-896-2400

Suzanne E. Rollier
ARDC No. 283865 (Illinois)
Holland & Knight LLP
131 S. Dearborn Street, 30th Floor
Chicago, Illinois  60603
312-263-3600

# 5131948_v1

28