IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MARK THOMAS, individually ) <br> and on behalf of all others similarly situated ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> ) <br> RITZ CAMERA CENTERS, INC., ) <br> ) <br> Defendant. ) | No. 08 CV 453 <br><br> Judge Guzman <br><br> Magistrate Judge Cole <br><br> JURY DEMANDED |

**PLAINTIFF'S REPLY
IN SUPPORT OF CLASS CERTIFICATION**

Ritz Camera Centers, Inc. ("Ritz") does not contest that it treated each and every class member identically and systematically, nor does it contest that it treated the putative Cook County class members identically to how it treated plaintiff. As explained in plaintiff's moving papers, plaintifff must prove in this case (1) that defendant's receipts violated § 1681c(g), (2) that defendant's actions were reckless under Safeco v. Burr, and (3) damages. Because defendant treated plaintiff the same way it treated all the rest of the class members in this case, the class should be certified.

Most of Ritz' challenges to certification are made on grounds that were rejected by the Seventh Circuit in *Murray v. GMAC Mortgage*, 434 F.3d 948 (7th Cir. 2006), and by all Seventh Circuit District Courts that have considered the issue of certification in FACTA cases:

    a.    *Cicilline v. Jewel Food Stores, Inc.*, 07-CV-2333, 2008 U.S. Dist. LEXIS 29505 (N.D.Ill. March 31, 2008) (Dow, J.);

    b.    *Harris v. Best Buy Co.*, 07 C 2559, 2008 U.S. Dist. LEXIS 22166 (N.D.Ill. March 20, 2008) (St. Eve, J.) (internet receipt);

    c. *Redmon v. Uncle Julio's of Ill.*, 07 C 2350, 2008 U.S. Dist. LEXIS 18513 (N.D.Ill. March 7, 2008) (Castillo, J.);

    d. *Matthews v. United Retail, Inc.*, 07 C 2487, 2008 U.S. Dist. LEXIS 17217 (N.D.Ill. March 5, 2008) (Castillo, J.);

    e. *Meehan v. Buffalo Wild Wings, Inc.*, 07 C 4562, 2008 U.S. Dist. LEXIS 14133 (N.D.Ill. Feb. 26, 2008) (Lindberg, J.);

    f. *Pacer v. Rockenbach*, 07 C 5173, docket number 34 (N.D.Ill Feb. 22, 2008) (minute order) (Shadur, J.);

    g. *Harris v. Circuit City Stores, Inc.*, 07 C 2512, 2008 U.S. Dist. LEXIS 12596, 2008 WL 400862 (N.D. Ill. Feb. 7, 2008) (Schenkier, J.) (internet receipt);

    h. *Troy v. Balducci*, case no. 07 C 2418, 2007 U.S. Dist. LEXIS 89004 (N.D.Ill. Dec. 4, 2007) (Aspen, J.);

    i. *Halperin v. Interpark Inc.*, case no. 07 C 2162, 2007 U.S. Dist. LEXIS 87851 (N.D.Ill. Nov. 29, 2007) (Bucklo, J.).

  This case is no different than each of the other cases that have been certified. Liability should be decided on a classwide basis. Other grounds Ritz offers for denial attempt to shift the focus of the case on plaintiff's conduct, rather than its own admittedly illegal conduct. This Court should follow *Murray* and its progeny and certify the proposed class.

**I. Numerosity is Satisfied**

  Because of Ritz' motion to stay before Judge Guzman, the District Court is well aware of the California cases and proposed settlement agreement that defendant mentions. Ritz has provided a copy of its proposed national settlement and unopposed motion for class certification in those cases here. The District Court ordered that this case should go forward despite the California litigation,

and has not modified that order.

Until, if ever, a court grants *final approval*[1] to Ritz's proposed national settlement, the putative class plaintiff seeks to certify has not been subsumed by anything. Defendant's "worries" about *res judicata* are unfounded because the doctrine does not even come into the picture until a final judgment has been rendered in an action. There is no telling when that might happen, if ever. Indeed, it is entirely possible that the Ritz national settlement will be considered insufficient and rejected by the California Court.

The Seventh Circuit analyzed competing class actions in *Blair v. Equifax Check Servs.*, 181 F.3d 832, 838 (7th Cir. Ill. 1999), and held that, under those facts, which are similar to those here, the District Court of the later-filed case properly proceeded despite a class settlement in a nearly identical, competing case. In so holding, Judge Easterbrook reasoned that the first case was "far from decision on the merits; it has seen negotiation, not combat," and held that a relevant issue was whether it was clear that one case would proceed to judgment before another: "first to reach judgment controls the other, through claim preclusion (res judicata).... Crawford has yet to produce a final and binding decision, however, so Judge Plunkett was entitled to proceed with Blair in the interim." *Id.* Similarly in this case, there is no indication that Ritz has offered any discovery to the plaintiffs in the California cases. Thomas filed his motion for class certification in this case the corresponding motion in California, even though the California cases had been pending twice as long.

In any event, Ritz admitted in its response that the putative class in this case consists of 75,000 receipts printed in retail locations in Cook County. See Response at page 7. This is

---

[1] The settlement has not been preliminarily approved either.

3

information that Ritz has had all along, and plaintiff's reliance thereon does not necessitate any "sur-reply" as Ritz threatens. Plaintiff requested in his motion that this Court draw inferences in favor of a finding of numerosity, *Lucas v. GC Servs. L.P.*, 226 F.R.D. 337, 340 (N.D. Ind. 2005); an inference later confirmed through Ritz' own admissions. Certainly the fact that plaintiff was correct in his proffered inference about a fact that has always been known to defendant does not destroy numerosity.

It is undisputed that plaintiff received a receipt with his expiration date at a Ritz location in Cook County. just as each class member did. Plaintiff provided that receipt to defendant. In fact, defendant used that receipt as an exhibit to plaintiff's deposition. Ritz cannot claim surprise as to what location it provided the receipt to plaintiff. While plaintiff may have made a scrivener's error in a separate allegation in the complaint concerning the exact location where the violation occurred, it does not impair the allegations in the class motion or memorandum.

**II. Plaintiff's Claim is Typical of the Class Members' Claims.**

Rather than deal with the issues relating to this case and class certification, Ritz has opted to attack the plaintiff for issues completely separate from Ritz' noncompliance with FACTA. Whether plaintiff knew about FACTA before this lawsuit has nothing to do with Ritz' liability or plaintiff's adequacy or typicality. The bottom line is that Ritz treated plaintiff the same way it treated everyone else in the class: it willfully disregarded the law when it provided each class member with an illegal receipt.

Ritz does not have any defense to liability based on plaintiff's knowledge of the law. FACTA applies to all cardholders; not just to cardholders who were unaware of their rights. In other words, there is no safe harbor provision that allows Ritz to violate FACTA as long as the consumer was aware of the truncation requirements.

In any event, Ritz is simply wrong. Mr. Thomas is self-employed and works for various clients for accounting issues as well as operational and performance productivity. *See* Thomas Dep p. 15 attached as *Exhibit 1*. Most of the clients are auto dealerships. *Id*.

Despite Ritz's assertion to the contrary, Mr. Thomas did insure that the dealerships were in compliance with FACTA regarding expiration dates. *Id*. p. 60:16-24. Mr. Thomas testified that there was a disconnect into thinking that the law applied to him personally. *Id*. In other words, he was making sure that his clients were in compliance and did not think to check the receipts that had been provided to him by other merchants until later. *Id*. at 61.

Mr. Thomas also testified that he would do a walk through audit in the mornings of his clients sales departments to insure that no customers' private information is left out. *Id*. at 69:1-10.

Ritz then specifically asked Mr. Thomas if he took any steps to insure that the point of sale printers for the credit card receipts at he dealership were complaint. Mr. Thomas answered he did check the printers at different times and they were complaint. *Id*. at lines 11-20.

Ritz asked a followed up question if Mr. Thomas was the one responsible for changing the software or hardware to make it compliant. Mr. Thomas answered: "No. Again, they all were from the time that I looked at that so we didn't need a change." *Id*. at lines 21-24.

This is not the case of the pot calling the kettle black. Ritz violated the law here, not plaintiff. Regardless, plaintiff's knowledge or lack of knowledge has no bearing on whether Ritz acted willfully or not. As explained in plaintiff's motion and memorandum, the issue of whether Ritz willfully violated the statute will be decided on what Ritz knew or should have known and will be uniform across the class, including Mr. Thomas.

Rule 23 requires that the claims of the named plaintiff be typical of the claims of the class:
> A plaintiff's claim is typical if it arises from the same event or practice or course of

5

> conduct that gives rise to the claims of other class members and his or her claims are based on the same legal theory. The typicality requirement may be satisfied even if there are factual distinctions between the claims of the named plaintiffs and those of other class members. Thus, similarity of legal theory may control even in the face of differences of fact. *De La Fuente v. Stokely-Van Camp, Inc.,* 713 F.2d 225, 232 (7th Cir. 1983) (citation omitted).]

Typicality has been met.

### III. Plaintiff is an Adequate Representative

Ritz argues that plaintiff did not assert enough facts about himself to prove to the Court that he is an adequate representative and that his understanding of the lawsuit is fundamentally flawed. It further argues that plaintiff is not adequate since he has barely participated in this lawsuit.

Yet, in plaintiff's memorandum he asserted that he understands the obligations of a class representative, and has retained experienced counsel. As demonstrated below, plaintiff easily meets the adequacy requirements laid out in *Surowitz v. Hilton Hotels Corp.*, 383 U.S. 363, 86 S. Ct. 845, 15 L. Ed. 2d 807 (1966) and its progeny, including *Eggleston v. Chicago Journeymen Plumbers' Local Union*, 657 F.2d 890, 896 (7th Cir. 1981).

Further, plaintiff's moving papers were properly supported. Plaintiff set forth facts showing his interest are coincident with the general interests of the class. Plaintiff asserted that both plaintiff and the class members seek money damages as the result of defendant's violation of the FCRA. Given the identity of claims between plaintiff and the class members, there is no potential for conflicting interests in this action. There is no antagonism between the interests of the named plaintiff and those of the class. See Memorandum p. 8.

Further, defendant had ample opportunity to cross examine these issues in plaintiff's deposition which happened after the class motion had been filed, and was not able to come up with any evidence showing otherwise.

Ritz further argues that plaintiff is not adequate as he has a fundamental misunderstanding of the case since his goal is to have Ritz follow the laws that "continue to protect people's identity from being stolen and creating problems for individuals." *See* Ritz's response p. 10. Ritz argues that this case has nothing to do with identity theft and that there are no factual allegations in the complaint relating to identity theft.

It is Ritz who has a fundamental misunderstanding about what this case is about. As alleged in ¶4 of the complaint "The purpose of this "truncation requirement" is to prevent identity theft. The Federal Trade Commission estimates that over 9 million persons each year have their identity assumed by criminals for financial gain, causing losses in excess of $50 billion." And as one Court in this District succinctly held, "[p]lacing expiration dates on credit card receipts exposes consumers to a higher risk of identity theft than otherwise." *Iosello v. Leiblys, Inc.*, 502 F.Supp.2d 782, 786 (N.D. Ill. 2007).

Plaintiff also alleged that "[to] curb this means of identity theft, Congress prohibited merchants who accept credit cards and debit cards from issuing electronically-generated receipts that display either the expiration date or more than the last five digits of the card number. The law gave merchants who accept credit cards and/or debit cards up to three years to comply with its requirements, requiring full compliance with its provisions no later than December 4, 2006." *Id.* at ¶9, 10.

Ritz is also wrong when it asserts that there are no allegations in the complaint relating to identity theft. In fact the words "identity theft" appears fourteen times in plaintiff's complaint.

It is clear from the Mr. Thomas' deposition that he knows that FACTA requires truncation of the expiration dates on credit card receipts, he is suing Ritz for its failure to comply with FACTA truncation provision and his goal is to enforce the provision of FATA to require Ritz to follow the

7

law and continue to protect people's identity from being stolen.

Ritz acknowledges that plaintiff reviewed the class complaint before it was filed, he had three to five telephone calls with his counsel and that plaintiff receives e-mails from his counsel as well as responded to those e-mails. He also reviewed the pleadings to prepare for his deposition, which he took time off work to attend.

Ritz is again wrong when it asserts that plaintiff could not recall if he reviewed any pleadings beside the complaint. In answering what Mr. Thomas did to prepare for the deposition he answered that he "reviewed the documents that were forwarded to me at different times." *Id*. at p. 19:8-11. When asked what documents he reviewed, he answered "copies of the filing(s)." *Id*. at 14-15.

Ritz argues that the above time spent shows that Mr. Thomas is apathetic, but Ritz ignores the fact that the lawsuit was filed on January 22, 2008 and plaintiff was only deposed a bit over two months afterwards. Plaintiff is unsure how much more effort plaintiff have could have put forth in such a short time frame.

Ritz also mischaracterizes Mr. Thomas' testimony when it argues that he has very little recollection of his purchase at Ritz. To the extent plaintiff's *purchase* is relevant, rather than defendant's *illegal conduct*, Mr. Thomas testified that he bought a Fuji Finepix digital camera. *Exhbit 1* at p. 34: 12-13. He further testified that he returned the camera and bought a different model, but he can't recall the new camera's model number since he no longer has it. *Id*. at 36. He testified that he walked through Sears and a camera at Sears struck his interest. *Id*. at p. 40. He testified that he then went to Ritz to look at the camera, Ritz had it on sale and spent probably twenty minutes in the store before purchasing it. *Id*. at p 40-41.

Further, plaintiff testified that he could not recall which credit card he used as he did not recognize the last four digits of the card number, but that he could have looked at his past statements

to find out. *Id*. p. 42-43.

In any event, none of Ritz's criticisms of plaintiff refutes the fact that plaintiff does not have interests antagonistic to those of the class. *Rosario v. Livaditis,* 963 F.2d 1013, 1018 (7th Cir. 1992). Mr. Thomas has demonstrated that he is a conscientious representative and he should be named as class representative.

### IV.     Individual Issues Do Not Predominate

Ritz camera argues that its unapproved settlement agreement to a national class should end this litigation and in the next breath argues that individual issues concerning statutory damages predominate to defeat certification. It then incredulously argues that individual actions are the preferred choice.

This argument has been considered, and rejected, by the Seventh Circuit. In *Carnegie v. Household Bank*, cited extensively in plaintiff's opening brief and ignored by Ritz, the Seventh Circuit held that:

> It would hardly be an improvement to have in lieu of this single class action 17 million suits each seeking damages of $15 to $30.... The realistic alternative to a class action is not 17 million individual suits, but zero individual suits, as only a lunatic or a fanatic sues for $30. But a class action has to be unwieldy indeed before it can be pronounced an inferior alternative—no matter how massive the fraud or other wrongdoing that will go unpunished if class treatment is denied—to no litigation at all.

Determination of whether defendant acted willfully will apply equally with respect to each class member. Individual actions would be more costly to plaintiffs paying filing fees, and to Ritz in defense costs. The current filing fee for a federal lawsuit, even one seeking statutory damages of $100, is $350. It would therefore cost $26,250,000 (75,000 times $350) in filing fees just to *initiate* all of those cases. For Cook County alone. Further, according to the Clerk of the Court for the

9

Northern District of Illinois, there were 8,093 new cases filed in this District in 2006.[2] If all of the cases were filed in this District, the 75,000 would dwarf the number of cases filed here in 2006. This does not make sense where the proofs for each individual suit would be identical.

Just as the Circuit City defendant did, Ritz "ignores the societal benefit it may achieve from class treatment: if defendant is correct on liability, then that determination will be binding on all class members, and defendant will not have to worry about others bringing this claim in Illinois. Third, we find that there is "societal gain" in using the most efficient mechanism for determining liability in a case where the individual stakes are likely too small to support individual suits." *Harris v. Circuit City*, 2008 U.S. Dist. LEXIS 12596 (N.D.Ill. Feb. 7, 2008).

In addition, Ritz is stopped from taking conflicting positions before different courts. It has made it very clear that plaintiff's allegations and class definition mirrors the national claims and allegations except as to scope. Its motion to transfer and reply as well as its class response all assert that the Cook County putative class claims will be handled and in fact subsumed by the putative national class.

Ritz cannot assert in California that all elements for certification are present, and then flip-flop in Chicago and argue that certification is improper because of individual issues. If Ritz is correct, then having a national settlement based on a uniform payout of coupons to the putative class would be improper and not an adequate settlement.

**V.    Seventh Circuit Law Controls, and Compels Certification.**

        **A.    *Murray v. GMAC* Rejected Defendant's Disproportionate Damages Argument**.

---

[2] See http://www.ilnd.uscourts.gov/CLERKS_OFFICE/STATS/crtstats.htm, visited on February 11, 2008.

10

In the Seventh Circuit, the issue of whether FCRA statutory damages cases based upon standardized conduct should be certified has been unequivocally decided.

*Murray* was a Rule 23(f) discretionary appeal where the Seventh Circuit answered what it called "some fundamental questions about the management of consumer class actions." *Id.* at 951. Further, *Murray* involved the identical damages section of the FCRA. 15 U.S.C §1681n.

The FCRA damages provision applies to Ritz's systematic internet transactions just as much as it does to companies that have violated the FCRA in other ways.

### B. *Murray v. GMAC* Ratified Plaintiff's Choice Not to Seek Actual Damages on a Class Basis.

The Seventh Circuit's *Murary v. GMAC* decision unequivocally rejected defendant's argument that plaintiff "sold out" the class by asking for statutory damages, only. In fact, Judge Easterbrook nearly endorsed such an approach in that FCRA class action:

> individual losses, if any, are likely to be small--a modest concern about privacy, a slight chance that information would leak out and lead to identity theft. That actual loss is small and hard to quantify is why statutes such as the Fair Credit Reporting Act provide for modest damages without proof of injury.
>
> Refusing to certify a class because the plaintiff decides not to make the sort of person-specific arguments that render class treatment infeasible would throw away the benefits of consolidated treatment.
>
> Unless a district court finds that personal injuries are large in relation to statutory damages, a representative plaintiff must be allowed to forego claims for compensatory damages in order to achieve class certification. When a few class members' injuries prove to be substantial, they may opt out and litigate independently.

434 F.3d at 953 (paragraph breaks supplied). Plaintiff's position with respect to actual damages is appropriate, and the class should be certified.

### C. Class Representatives without Actual Damages May Represent Class Members with Actual Damages.

11

*Murray v. GMAC* is clear that a debtor without actual damages may be the class representative for persons with actual damages. It even suggested that persons with actual damages might want to opt out, but that it would be their choice to do so. *Murray* only affirmed earlier precedent in *Keele v. Wexler*, 149 F.3d 589, 594 (7th Cir. 1998), which found that a Fair Debt Collection Practices Act plaintiff without actual damages was an adequate representative for a class of persons with, and without, actual damages. Wal-Mart's argument that plaintiff is inadequate in this statutory damages-only case because he has no actual damages is wrong.

Furthermore, although plaintiff does not seek punitive damages in this case, the fact that Congress permitted FCRA plaintiffs to ask for punitive damages *in addition to* statutory damages for a willful violation, 15 U.S.C. § 1681n(a)(2), indicates that the law was meant to have "teeth." The class should be certified so that the appropriate amount of statutory damages may be tried on a class-wide basis.

### D. Post-Lawsuit "Voluntary" FACTA Compliance Is Not An Appropriate Reason to Deny Certification.

Common sense and policy dictate rejection of Ritz's argument that the class should not be certified because it "fixed" the violation after this lawsuit was filed. Plaintiff complains of a disclosure violation. The damage has been done. See *Murry* at 952-53 (the "slight chance that information would leak out and lead to identity theft" was enough to justify a statutory damages class action under the FCRA); *Bartlett v. Heibl*, 128 F.3d 497, 501 (7th Cir. 1997) (FDCPA plaintiff may sue for statutory damages even if he has not *read* collection letter); *Hamm v. Ameriquest Mortg. Co.*, 506 F.3d 525 (7th Cir. 2007) ("hypertechnicality reigns" for TILA claims even where no actual damages are alleged).

As Judge Castillo found, "[FACTA] does not provide for an exception based on

after-the-fact compliance, or based on [defendant's] argument that it did not benefit from its alleged violations." *Matthews v. United Retail, Inc.*, 2008 U.S. Dist. LEXIS 17217, at *16 (N.D. Ill. Mar. 5, 2008). Congress could have provided a safe harbor for after-the-fact compliance. Instead, Congress allowed retailers three years to comply. Even if Ritz had not known abut FACTA, which it undisputedly did, knowledge of the law is never a defense in a civil case. As the Seventh Circuit held in *Torres v. INS*, 144 F.3d 472, 474 (7th Cir. 1998):

> The duty of fair notice of changes in law is a technical and qualified one. Many laws take effect on the date of enactment, without even the brief (30-day) grace period of section 309(c)(4)(C).
>
> Civil laws are sometimes (tax laws routinely) made retroactive, which means that they go into effect before publication; and this is allowed. Judge-made rules of law are frequently changed by judicial decision, and the change goes into effect on the date of the decision, *Harper v. Virginia Dept. of Taxation*, 509 U.S. 86, 96-97, 125 L. Ed. 2d 74, 113 S. Ct. 2510 (1993)--which means before publication in the law reports.
>
> Ignorance of a statute is generally no defense even to a criminal prosecution, and it is never a defense in a civil case, no matter how recent, obscure, or opaque the statute. [Id. Line breaks supplied]

Ritz failed to comply with the law similarly with respect to plaintiff and the class even though it had three years to bring its internet receipts into compliance. The class should be certified so that summary judgment and trial may be most efficiently and effectively litigated.

### VI. <u>CONCLUSION</u>

The proposed class meets the requirements of Rules 23(a) and 23(b)(3), and the Court should grant plaintiff's motion for certification and appoint plaintiff's counsel as class counsel.

Respectfully submitted,

/s/Keith J. Keogh

13

Keith J. Keogh
Alexander H. Burke
LAW OFFICES OF KEITH J. KEOGH, LTD.
227 W. Monroe Street, Suite 2000
Chicago, IL 60606
(312) 726-1092/(312) 726-1093 (fax)

## CERTIFICATE OF SERVICE

I, Keith J. Keogh, hereby certify that on May 5, 2008, I caused a true and correct copy the forgoing document to all attorneys of record through the ECF system for the Northern District of Illinois.

/s/Keith J. Keogh